**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES TALBERT** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO.  20-3401** |
| | : | |
| **WELL PATH,** *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                          **August 19, 2020**

Incarcerated Charles Talbert *pro se* filed his proposed second amended Complaint asking we excuse him from his filing obligations because Pennsylvania's Governor and Secretary of Corrections and its contracted prison medical provider expose him to the risk of COVID-19 in both his present SCI-Dallas facility and in his earlier SCI-Phoenix facility.  He is not ill with COVID-19 nor has he been exposed to anyone with COVID-19.  Because we barred Mr. Talbert in April 2019 from filing further lawsuits without paying the filing fees, Congress requires he plead imminent danger of serious physical injury to proceed *in forma pauperis*. Rank speculation of contracting COVID-19 does not constitute imminent danger of serious physical injury to meet Congress's exception to the filing bar under 28 U.S.C. § 1915(g) and to proceed without paying the filing fees. We deny Mr. Talbert's *in forma pauperis* motion and require he proceed consistent with our July 20, 2020 and August 7, 2020 Orders denying his two earlier attempts to overcome Congress's bar if he wishes to proceed with this second amended Complaint.

**I.      Alleged *pro se* facts in the second amended Complaint.**

Charles Talbert suffers from asthma, high blood pressure, high cholesterol, and high triglycerides.[1] The Pennsylvania Department of Corrections held Charles Talbert in custody at SCI-Dallas in Luzerne County as apparently both a pre-trial detainee and on a Philadelphia

County criminal conviction.[2]  On March 10, 2020, the Department transferred him to SCI-Phoenix in Montgomery County on a temporary basis to attend a suppression hearing in an upcoming criminal trial before the Philadelphia County Court of Common Pleas.[3]  Governor Tom Wolf issued the Pennsylvania stay-at-home order to mitigate COVID-19 spread before Mr. Talbert's suppression hearing, causing the court to continue his hearing.[4]  The Governor's stay-at-home order also allegedly ceased all inmate transfers requiring Mr. Talbert to remain at SCI-Phoenix through July 2020.[5]

Montgomery County, where SCI-Phoenix is located, confirmed "thousands" of positive COVID-19 cases and "hundreds" of deaths from the virus by the end of March 2020.[6]  Governor Wolf and Secretary of Corrections John Wetzel knew of the spread of the virus in Montgomery County, but failed to develop "timely, adequate, and precautionary-ongoing measures to effectively keep the public from closely interacting with inmates" in SCI-Phoenix.[7]  Well Path, the medical services provider to the prison population, did not test themselves or other SCI-Phoenix employees to prevent introduction of the virus into SCI-Phoenix.[8]

The virus spread to SCI-Phoenix. Six people incarcerated in SCI-Phoenix died from COVID-19 and "approximately" seventeen others tested positive by April 16, 2020.[9]  Well Path failed to test virus-exposed people in the general population prior to moving them to segregated housing, infecting some people in segregated housing.[10] The transfer of potentially exposed prisoners into segregated housing put Mr. Talbert in danger of exposure to the virus, when two people who "potentially had been exposed to the virus" moved into his cell.[11]

With the easing of some COVID-19 mitigation and stay-at-home orders, the Department of Corrections transferred Mr. Talbert back to SCI-Dallas on July 28, 2020.[12] He currently remains at SCI-Dallas but, due to an upcoming trial date, the Department of Corrections will

transfer him back to SCI-Phoenix "shortly."[13]  Luzerne County, where SCI-Dallas is located, confirmed 3,352 cases of COVID-19 at 183 deaths by August 5, 2020.[14]  Governor Wolf, Mr. Wetzel, and Well Path failed to protect incarcerated people at SCI-Dallas by not testing exposed people in the general population before transferring them to segregated housing.[15]  Mr. Talbert is "continuously exposed" to the virus.[16]

While Governor Wolf released other medically vulnerable people from custody, Mr. Talbert remains in custody at SCI-Dallas despite the risk of complications and death which may arise if he contracts COVID-19.[17]  Stress and anxiety from the fear of exposure to the virus have aggravated Mr. Talbert's heart conditions.[18]  He faces "imminent danger of contracting the novel coronavirus" in SCI-Dallas or upon return to SCI-Phoenix.[19]

## II.   Analysis

Mr. Talbert again amends the complaint we dismissed in our July 20, 2020 and August 7, 2020 Orders and again moves to proceed *in forma pauperis*.[20]  The issue is whether Mr. Talbert's alleged "continuous" exposure to COVID-19 in the prison population generally constitutes imminent danger of serious physical injury to clear Congress's section 1915 screening bar.[21]  Mr. Talbert fails to plausibly allege he faces imminent danger of serious physical injury because his general allegations of exposure to other incarcerated people who may have, in turn, experienced exposure to COVID-19 do not reach the level of imminent danger.  He does not plead COVID-19 illness or being in contact with anyone testing positive for COVID-19.

The Prison Litigation Reform Act ("the Act") requires a prisoner who previously had at least three complaints dismissed for being "frivolous, malicious, or fail[ing] to state a claim upon which relief may be granted" to allege he is "under imminent danger of serious physical injury" to proceed *in forma pauperis*.[22]  Our Court of Appeals has defined "imminent dangers" as those

3

which are "impending[,]" so past instances of serious physical injury do not merit section 1915(g)'s exception.[23]   A plaintiff's allegations of imminent danger must be construed liberally in the plaintiff's favor.[24]

We detailed Mr. Talbert's history of filing complaints while in prison and his status as a "three-strike" plaintiff in our April 5, 2019 memorandum in *Talbert v. Carney*.[25]   Mr. Talbert filed "at least fifty-four lawsuits" in our District by April 2019.[26]   He had "at least four" *pro se* complaints dismissed for being frivolous or failing to state a claim from 2013 to 2016.[27]   We reviewed his April 2019 complaint in *Talbert v. Carney* under section 1915(g), and required Mr. Talbert plead imminent danger of serious physical injury.[28]   We declined his motion to proceed *in forma pauperis* because he did not plead imminent danger.[29]   In the last month, we twice declined Mr. Talbert's motion to proceed *in forma pauperis* after he failed to allege imminent danger of serious physical injury from different alleged injuries.[30]

A plaintiff does not clear section 1915's bar where he alleges eventual or suspected development of a serious health condition.[31]   Allegations of potential exposure to COVID-19, without more, do not fit into section 1915's exception.   For example, in *Littlejohn v. Whitmer*, Judge Maloney denied a plaintiff's similar motion to proceed *in forma pauperis* because the plaintiff had not come into contact with anyone testing positive for the virus and he "failed to allege facts showing that he is at any greater risk of contracting COVID-19 than the general public."[32]   Judge Maloney found the plaintiff's claims the virus spread in his facility "factually frivolous" because the Department of Corrections had not reported any positive cases among the incarcerated population and noted the facility's "extraordinary measures" to limit the threat posed by the virus.[33]

4

Courts dismiss motions to proceed *in forma pauperis* alleging imminent danger from exposure to COVID-19 even when the facility may have positive cases of the virus. In *Johnson v. Wilcher*, Judge Ray recommended the district court deny the plaintiff's motion to proceed *in forma pauperis* because the plaintiff failed to allege imminent danger of serious physical injury even though he pleaded confinement close to incarcerated people testing positive for COVID-19 and lack of masks, gloves, and disinfecting products.[34]   Judge Ray reasoned the plaintiff's claims fell short of alleging a "specific and particularized risk of imminent physical harm."[35]   In *Frederick v. Wakulla Correctional Institution Administration and Staff*, Judge Cannon recommended the district judge dismiss the plaintiff's motion to proceed *in forma pauperis* because the plaintiff failed to allege imminent danger of serious physical injury as "general allegations regarding potential COVID-19 exposure are insufficient to establish imminent danger."[36]   In *Jones v. Douglas County Jail*, Judge Crow denied a plaintiff's motion to proceed *in forma pauperis* as not sufficiently specific and credible despite plaintiff's allegation prison officials failed to respond to grievances requesting masks and another incarcerated person's exposure to the virus.[37]

Our Court of Appeals has defined "imminent dangers" as those which are "impending."[38]  Past instances of danger of serious physical injury are not impending. Mr. Talbert's allegation his past interactions with untested cellmates transferred from general population in SCI-Phoenix could have exposed him to COVID-19 does not reach section 1915(g)'s requirement of impending, imminent danger of serious physical injury.

Mr. Talbert also fails to plead adequate imminence as to risk of future exposure to the virus.  Mr. Talbert alleges he faces "imminent danger of contracting the novel coronavirus" in SCI-Dallas or upon return to SCI-Phoenix, which will occur "shortly."[39]  He alleges both prisons

fail to test people before transfer from general population to segregated housing.[40]  Mr. Talbert pleads the virus spreads among those incarcerated at SCI-Phoenix,[41] but does not plead incarcerated people tested positive for the virus at SCI-Dallas let alone any near him.  Mr. Talbert's allegation of fear of exposure to the virus in SCI-Dallas resembles *Littlejohn*, where Judge Maloney denied the plaintiff's motion to proceed *in forma pauperis* because the plaintiff had not come into contact with anyone testing positive for COVID-19 and did not allege he faced a greater risk of contracting the virus than the general public.[42]  Mr. Talbert does not allege sufficient facts of imminent danger of serious physical injury at SCI-Dallas to clear section 1915(g)'s high bar.

Mr. Talbert also pleads the Department of Corrections will transfer him back to SCI-Phoenix soon, which did face positive tests for COVID-19.[43]  Mr. Talbert alleges officials at SCI-Phoenix transferred people from the general population to segregated housing without testing them for the virus.[44]  In *Johnson*, Judge Ray recommended the district court deny the plaintiff's motion to proceed *in forma pauperis* because the plaintiff failed to allege "specific and particularized risk of imminent physical harm" when he pleaded confinement close to incarcerated people testing positive for COVID-19.[45]  Judges Cannon and Crow in *Frederick* and *Jones* denied similar motions to proceed *in forma pauperis* because the allegations lacked the specificity necessary to establish imminent danger.[46]  Like the plaintiffs in *Johnson*, *Frederick*, and *Jones*, Mr. Talbert fails to allege facts to demonstrate particularized, specific risk of harm to rise to the level of imminent danger of serious physical injury.

Though Mr. Talbert alleges the medical provider, Governor and Secretary "continuously expose[]" him to the virus,[47] he does not plead officials at either prison ever put him in direct contact with another incarcerated person who tested positive for the virus. He does not plead the

virus spreads unmitigated in his current prison, SCI-Dallas. He also fails to adequately plead, if he does transfer to SCI-Phoenix, officials there would house him with anyone who would infect him with the virus.

We understand Mr. Talbert's fear of contracting COVID-19, particularly with his health concerns. But Congress prevents us from granting Mr. Talbert's motion unless he pleads impending, imminent danger of serious physical injury. Mr. Talbert's allegations do not demonstrate he faces a special risk of exposure to the virus. Mr. Talbert fails to plead facts demonstrating he faces "imminent danger of serious physical injury" as provided in section 1915(g).

## III.    Conclusion

We deny Mr. Talbert's motion to proceed *in forma pauperis*. His allegations of exposure to COVID-19 do not constitute imminent danger of serious physical injury and do not clear Congress's section 1915 screening bar.  As we advised him in our July 20, 2020 and August 7, 2020 Orders, Mr. Talbert may proceed with this second amended Complaint if he pays the required fees.

---

[1] *Id*. at ¶ 9.

[2] ECF Doc. No. 13 at ¶¶ 12-4.

[3] *Id*. at ¶¶ 12, 14, 15, 32.

[4] *Id.* at ¶ 16.

[5] *Id.* at ¶¶ 17, 19.

[6] *Id*. at ¶ 18.

---

[7] *Id.* at ¶¶ 19-20.

[8] *Id.* at ¶ 21.

[9] *Id.* at ¶ 22.

[10] *Id.* at ¶¶ 26, 27, 29.

[11] *Id.* at ¶¶ 30-31.

[12] *Id.*

[13] *Id.* at ¶ 39.

[14] *Id.* at ¶ 33.

[15] *Id.* at ¶ 34.

[16] *Id.* at ¶ 35.

[17] *Id.* at ¶ 36.

[18] *Id.* at ¶ 40.

[19] *Id.*

[20] ECF Doc. Nos. 7, 12.

[21] 28 U.S.C. § 1915(g).

As always, we "liberally construe[]" Mr. Talbert's second amended Complaint, *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011), and read his allegations in the light most favorable to him. *See Gibbs v. Cross*, 160 F.3d 962, 966 (3d Cir. 1998). We require him to allege facts and not "vague and [] conclusory" allegations he is in imminent danger of serious physical injury. *Ball v Famiglio*, 726 F.3d 448, 468 (3d Cir. 2013) *rev'd on other grounds, Coleman v. Tollefson*, 135 S.Ct. 1759, 191 L.Ed.2d 803 (2015).

[22] 28 U.S.C. § 1915(g).

[23] *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315-16 (3d Cir. 2001).

[24] *Gibbs v. Roman*, 116 F.3d 83, 86 (3d Cir. 1997), overruled on other grounds by *Abdul-Akbar*, 239 F.3d at 312.

[25] No. 19-1340, 19-1341, 2019 WL 1516940, at *3 n.19 (E.D. Pa. Apr. 5, 2019).

[26] *Id.* at *3.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] ECF Doc. Nos. 7, 12.

[31] *Brown v. Beard*, 492 F. Supp. 2d 474 (E.D. Pa. 2007); *see also Daker v. Robinson*, 802 Fed. App'x 513, 515 (11th Cir. 2020) (denying *in forma pauperis* motion where plaintiff alleged speculative contracting of HIV from use of "unsanitized clippers[.]").

[32] *Littlejohn v. Whitmer*, No. 20-112, 2020 WL 45581658, at *3 (W.D. Mich. Aug. 10, 2020).

[33] *Id.*

[34] *Johnson v. Wilcher*, No. 20-89, 2020 WL 2064935, at *2 (S.D. Ga. Apr. 28, 2020).

[35] *Id.*

[36] *Frederick v. Wakulla Corr. Inst. Admin. & Staff*, No. 20-219, 2020 WL 3066652, at *3 (N.D. Fla. May 13, 2020), *report and recommendation adopted sub nom.*, No. 20-219, 2020 WL 3065419 (N.D. Fla. June 9, 2020).

[37] *Jones v. Douglas Cty. Jail*, No. 20-3091, 2020 WL 1492703, at *1 (D. Kan. Mar. 27, 2020).

[38] *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315-16 (3d Cir. 2001).

[39] ECF Doc. No. 13 at ¶¶ 39-40.

[40] *Id.* at ¶¶ 26, 34.

[41] *Id.* at ¶ 22.

[42] *Littlejohn*, 2020 WL 45581658, at *3.

[43] ECF Doc. No. 13 at ¶ 39.

[44] *Id.* at ¶ 26.

[45] *Johnson*, 2020 WL 2064935, at *2.

[46] *Frederick*, 2020 WL 3066652, at *3; *Jones*, 2020 WL 1492703, at *1.

[47] ECF Doc. No. 13 at ¶ 35.